UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANE AND JENNIFER JENSEN,

        Plaintiffs,

        v.

U.S. BANK, N.A., a foreign legal entity, dba
U.S. Bank Home Mortgage,

        Defendant.

Case No. 3:12-cv-00333 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

At a hearing held on March 12, 2013, this Court granted summary judgment to defendant on all of plaintiffs' claims for relief. Plaintiffs have now filed a Motion for Reconsideration of that ruling as to their claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 USC §§ 1681-1681x, and Real Estate Settlement Procedures Act ("RESPA"), 12 USC §§ 2601-2617 (docket # 57). For the reasons set forth below, the motion is denied.

## STANDARDS

Motions for reconsideration are disfavored and justified only where the court "is presented with newly discovered evidence, committed clear error, or if there is an intervening

PAGE | 1 – OPINION AND ORDER

change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F3d 873, 880 (9th Cir 2009) (citation omitted). A motion for reconsideration is not a proper vehicle to "'raise arguments or present evidence for the first time [that] could reasonably have been raised earlier in the litigation.'" *Id* (citation omitted). Nor is it to be used to rehash previously rejected arguments. *See Hogan v. NW Trust Servs.*, No. 10-6027-HO, 2010 WL 1872990, at *1-2 (D Or May 7, 2010), *aff'd* 441 Fed Appx 490 (9th Cir 2011).

## DISCUSSION

### I. FCRA Claims

Plaintiffs seek reconsideration of summary judgment on their FCRA claims (Third and Fourth Claims) on three grounds: (1) the parole evidence rule does not apply to representations made by the bank to Mr. Jensen in March 2010; (2) plaintiffs are entitled to seek statutory damages under 15 USC § 1681n; and (3) plaintiffs have submitted admissible evidence of their damages for the false reporting of late payments during the trial plan period.

#### A. Parole Evidence Rule

In granting summary judgment on the FCRA claims, this Court concluded that plaintiffs' Home Affordable Modification Program ("HAMP") documents were unambiguous and that, as a result of its investigation, defendant did not err in continuing to report plaintiffs as in default due to their failure to cure the payment deficiency during the Trial Period Plan ("TPP") after the failed modification. Because the documents were unambiguous, the Court declined to consider extrinsic evidence concerning their meaning.

Plaintiffs do not seek reconsideration of these rulings. Instead, they argue that apart from their failed HAMP loan modification in late 2009, defendant's employee advised them on March 3, 2010, that the TPP "had unfairly caused [them] to become delinquent" and "to start

over and submit information for a traditional option type of loan modification" which "would clear [their] account and make [them] current" if they made a specified reduced payment for March 2010. D. Jensen Decl., ¶¶ 13-14. Based on this representation, plaintiffs contend that defendant erred in treating their account as in default after March 2010. And because this representation was oral and concerned a separate modification unrelated to the first HAMP loan modification, plaintiffs further argue that the parole evidence rule does not apply.

To seek reconsideration, plaintiffs are not relying on a change in the law or any newly discovered evidence. *See* Complaint, ¶ 10. Instead they are making a new argument to demonstrate that the Court committed clear error. Previously plaintiffs focused their FCRA claims on documents and oral statements made to them in reference to their 2009 application for a HAMP modification. They made no argument related to the March 3, 2010 conversation for a second "traditional option" loan modification. Without explaining why they failed to assert this argument earlier, this is not a legitimate basis for reconsideration.

Even if this new argument is considered, it fails. In order to state a claim under 15 USC § 1681s-2(b), plaintiffs must prove that: (1) they disputed information on their credit report to a credit reporting agency ("CRA"); (2) the CRA reported the dispute to defendant; (3) defendant failed to reasonably investigate the dispute and correct any discovered inaccuracies; and (4) defendant's failure caused plaintiffs to suffer actual damages. *Gorman v. Wolpoff & Abramson, LLP*, 584 F3d 1147, 1154-55 (9th Cir 2009), *cert denied*, 131 S Ct 71 (2010). Plaintiffs now argue that defendant failed to correct its reporting of their loan account as being in default due to its March 3, 2010 representation. This argument is rejected.

First, the representation, if made, was not an enforceable oral contract. A valid contract to modify a loan requires an offer, acceptance, and consideration. *McComas v. Bocci*, 166 Or

App 150, 156 n3, 996 P2d 506, 509 n3 (2000).  Assuming that plaintiffs' testimony creates a question of fact as to the first two elements, it does not create a genuine issue of fact as to the third element.  "A promise to do what a promisor is already legally obligated to do is not consideration."  *Jole v. Bredbenner*, 95 Or App 193, 197, 768 P2d 433, 435 (1989); *see also Barinaga v. JP Morgan Chase & Co.*, 749 FSupp2d 1164, 1173-74 (D Or 2010) (relying on *Jole* and other cases to reject alleged oral loan modification for lack of consideration, noting that "payment of a portion of what [plaintiff] was legally obligated to pay under the Loan is not adequate consideration for Chase's alleged agreement to permanently modify the terms of the Loan").  The only possible consideration in support of the alleged oral agreement is plaintiffs' agreement to pay the reduced amount of $1,792.65 for March 2010.  But plaintiffs were already obligated by their existing loan agreement to pay this amount and more.  They did not incur any additional obligation or make any new promise that could serve as consideration for the claimed oral contract.   In fact, they allege that their second loan modification request was denied.  Complaint, ¶ 11.

Second, this representation, if made, is not enforceable under any theory of implied contract through promissory estoppel.  The elements of promissory estoppel are:  (1) a promise; (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred; (3) actual reliance on the promise; (4) resulting in a substantial change in position.  *Neiss v. Ehlers*, 135 Or App 218, 223, 899 P2d 700, 703-04 (1995) (citation omitted).  Even if defendant promised to bring plaintiffs' account current and even if plaintiffs relied on the promise by making a reduced payment for one month, plaintiffs have not submitted any evidence of their substantial change in position as a result.  They remained obligated to make monthly payments as required by their loan.

PAGE | 4 – OPINION AND ORDER

More importantly, plaintiffs complained that defendant's inaccurate reporting began in late 2009 based on the alleged failure to add any arrearage incurred as a result of the TPP to the end of their loan. Hunsaker Decl., Exs. I (11/22/10 letter), K (complaint to BBB), N (complaint to OCC), S (1/20/11 ACDV to Equifax), U (12/5/11 ACDV to Transunion), V (12/5/11 dispute to Equifax). True, defendant also reported the reduced payment for March 2010 as a delinquent payment, but plaintiffs disputed all delinquent entries on their credit reports beginning with November 2009 and including March 2010. In their dealings with defendant and others, plaintiffs treated the March 2010 conversation primarily as defendant's acknowledgment that the delinquency was due to a problem with the TPP. D. Jensen Decl., ¶ 13 ("She explained that the trial period had unfairly caused us to become delinquent, and said that the bank was working on the problem.").

The two cases cited by plaintiffs are inapposite. In *Lenox v. Equifax Info. Servs.*, *LLC*, No. Civ. 05-1501-AA, 2007 WL 1406914 (D Or May 7, 2007), the plaintiffs withheld their mortgage payments for four years pending a dispute about a misapplied payment. Based on a series of communications with the lender, plaintiffs believed that their account "was frozen and feared that a payment prior to resolution of the dispute would result in a concession." *Id* at *2. After plaintiffs resolved their dispute with the lender, defendant still reported plaintiffs' account as delinquent. Due to a fact issue as to whether plaintiffs' account was frozen and, thus, not in default, defendant's motion for summary judgment on both the RESPA and FCRA claims was denied. *Id* at *10. In *Bradshaw v. BAC Home Loans, LP*, 816 F Supp2d 1066 (D Or 2011), the borrowers began making reduced loan payments based on the bank's letter advising that the loan modification had been approved. However, the modification did not go through, and the bank

reported the borrowers late.  Accordingly, the court concluded that a factual dispute existed as to the accuracy of the credit reports.

In contrast to both of those cases, the HAMP documentation signed by plaintiffs is not ambiguous, and no fact issue exists that plaintiffs were, as reported by defendant, in default due to the arrearage caused by the TPP.  Thus, even if this issue were properly before the Court, it is legally insufficient to defeat summary judgment.

### B. Damages Caused by the False 2009 Reporting

Plaintiffs also point to defendant's concession that it erred in reporting plaintiffs as late during the TPP in responding to the initial ACDVs received from the CRAs.  They argue that, contrary to this Court's ruling, they suffered actual damages as a result.  In support, they have submitted supplemental declarations stating that they suffered damages due to the reporting of late payments in 2009 "separate and apart from the reporting of late payments from [*sic*] in 2010 and 2011."  D. Jensen Supp. Decl., ¶ 2; J. Jensen Supp. Decl., ¶ 2.  Although admitting that they want defendant "to remove all of the late payments" from their credit report, they "couldn't believe that the bank would report [them] late when [they] made the payments [they] were told to make" which "was frustrating" and "upset" them.  *Id.*

However, this is not newly discovered evidence.  It was available to plaintiffs when they initially responded to defendant's summary judgment motion and should have been submitted then.

Even if this evidence is considered, it is not sufficient to avoid summary judgment.  Plaintiffs' frustration was caused by their ongoing dispute with defendant over the handling of their account after denial of the HAMP loan modification.  They cannot recover damages caused by that dispute, but instead can only recover damages due to defendant's failure to reasonably

investigate the dispute and correct any discovered inaccuracies after receiving the dispute notices from the CRAs.

Although plaintiffs now assert that they would have welcomed incremental changes, their conduct and statements clearly indicate that they would not be satisfied, and their frustrations allayed, until all of the late reporting was removed. That plaintiffs suffered damages due merely to defendant's inaccurate report for the three-month TPP in late 2009 TPP and/or March 2010 is implausible. That FCRA violation did not occur until defendant received the first disputes from the CRAs in 2011 (January 2011 by Mrs. Jensen and December 2011 by Mr. Jensen) which defendant corrected upon review of a subsequent set of disputes received from the CRAs. In Mr. Jensen's case, the error lasted only two weeks. Hunsaker Decl., Exs. HH-KK. Although the error lasted 11 months for Mrs. Jensen, the error was corrected. *Id*, Exs. S, EE, FF. No reasonable juror could conclude that the brief error concerning the reporting of a couple of months in 2009 and/or March 2010 caused plaintiffs any material damage separate and apart from their larger, ongoing dispute. It is not merely an issue as to the extent of the damages, as plaintiffs argue. There is simply insufficient evidence that plaintiffs were harmed more by the actionable reporting than by accurate reporting that is not actionable.

### C. Statutory Damages

The FCRA provides for statutory damages of between $100.00 and $1,000.00 for willful violations. 15 USC § 1681n; *Safeco Ins. Co. v. Burr*, 551 US 47, 69 (2007) (reckless disregard of requirement under the FCRA constitutes willful violation). Plaintiffs contend that they have submitted evidence that defendant recklessly failed to comply with the FCRA. In support, they point to evidence that defendant knew that they had applied for a modification and knew the

PAGE | 7 – OPINION AND ORDER

dates of the TPP. Yet defendant failed to delete the delinquencies and even note that plaintiffs disputed the account.

However, the record reveals that defendant corrected the error for both plaintiffs when it received and responded to subsequent dispute notices from the CRAs. Defendant did not attempt to conceal its error, delay reporting its error, or otherwise demonstrate that it know the reports were erroneous when made. Defendant's may have been negligent, but not willful.

As additional evidence of willfulness, plaintiffs previously relied on defendant's allegedly inconsistent reports. They pointed to defendant's failure to report the account exactly the same on plaintiffs' separate credit reports or to notify all of the CRAs of any updates made in responding to a dispute notice received from only one CRA. However, the evidence establishes that defendant responded to each dispute notice from the CRAs by updating the information reported for the specific person on whose behalf the dispute was made and to the particular CRA that submitted the dispute. Without any supporting legal authority, this evidence is insufficient to prove that defendant willfully violated the FCRA.

## II.     RESPA Claim

Plaintiffs also seek reconsideration of the Court's order granting partial summary judgment, and granting defendant's oral motion for summary judgment, on the RESPA claim (First Claim). Defendant admitted that it violated RESPA by failing to respond in writing to plaintiffs' November 2010 Qualified Written Request ("QWR") and to suppress the negative credit reporting for 60 days following its receipt. However, this court concluded that plaintiffs failed to submit admissible evidence of any damages due to those failures.

Plaintiffs point to their supplemental declarations as supplying the necessary evidence of damages. They assert that they "felt ignored and blown off" by defendant's failure to respond to

the QWR which "was frustrating" and "upset" them.  D. Jensen Supp. Decl., ¶ 3; J. Jensen Supp. Decl., ¶ 3.  Had defendant suppressed the adverse credit reporting for 60 days, they "could have refinanced with any other bank," but did not try based on their "previous experience with OnPoint."  D. Jensen Supp. Decl., ¶ 4; J. Jensen Supp. Decl., ¶ 4.  As previously noted, this is not newly discovered evidence and should have been submitted in response to defendant's motion.

Even if this evidence is considered, it is insufficient to avoid summary judgment.  Contrary to plaintiffs' assertions, the record reveals that defendant did not ignore plaintiffs' concerns.  It repeatedly tried to explain why the account was in default and what plaintiffs needed to do to bring it current.  On December 13, 2012, shortly after receiving the QWR, defendant explained to Mr. Jensen by telephone why the account fell into delinquency after the failed HAMP modification.  Allen Decl., Ex. B, p. 5.  Similar telephone calls occurred on January 4 and 28, 2011.  *Id* at 3-4.  And on February 9, 2011, defendant sent plaintiffs the payment history for their account so they could see the accounting for their loan.  *Id* at 1; Hunsaker Supp. Decl., Ex. A (D. Jensen Depo.), p. 428, Ex. C.  Plaintiffs may have disagreed with defendant's explanation, but it is implausible that the lack of a *written* response to the QWR caused them any material emotional harm or frustration.

Plaintiffs' argument that they suffered damage as a result of defendant's failure to stop the negative reporting on their account after receiving their QWR also fails.  RESPA requires only that credit reporting be halted for 60 days following the receipt of a QWR.  12 USC § 2605(e)(3).  Thus, the late payment reports would have reappeared on the plaintiffs' credit report by early February 2011.  While it is theoretically possible that plaintiffs could have tried to benefit from the 60-day respite by seeking refinancing or other credit, there is no evidence that they knew about RESPA's 60-day stoppage period when they submitted their QWR or sought

PAGE | 9 – OPINION AND ORDER

any credit during that 60-day period.  There is also no evidence upon which a jury could reasonably find that plaintiffs suffered cognizable emotional damage as a result of defendant's failure to temporarily halt what was accurate reporting.

## ORDER

Plaintiffs' Motion for Reconsideration (docket #57) is DENIED.

DATED  May 31, 2013.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
